IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| REBECCA DENISE SIDHU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-14-160-FHS-SPS |
| | ) |
| CAROLYN COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Rebecca Denise Sidhu requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do his previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on July 12, 1960, and was fifty-two years old at the time of the administrative hearing (Tr. 45, 132). She completed the eighth grade and has worked as a dishwasher (Tr. 18, 207). The claimant alleges an amended onset date of January 27, 2012, due to mental problems (Tr. 68, 207).

## Procedural History

The claimant applied for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 on October 27, 2011. Her application was denied. ALJ James Bentley held an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 13, 2013 (Tr. 22-44). The Appeals Council denied review, so this opinion is the Commissioner's final decision for purposes of appeal. 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. First, taking the claimant's substance abuse into consideration, the ALJ found that the claimant retained the residual functional capacity ("RFC") to perform a limited range of medium work, *i. e.*, she could lift/carry fifty pounds occasionally and twenty-five pounds frequently, stand/walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday, but that she could only occasionally handle and finger with the dominant

left hand. He further found she could perform simple tasks with some detail with routine supervision, but would be off task 20% of the time with a corresponding 20% reduction in productivity (Tr. 28). The ALJ then concluded that the claimant was unable to perform past relevant work, that there was no work in the general economy that the claimant was capable of performing, and that she was therefore disabled at step five (Tr. 38-39). But when the ALJ removed the claimant's substance abuse from consideration, he determined that she could perform medium work with the same handling and fingering limitations in the dominant hand, and that she could perform simple tasks with some detail with routine supervision (Tr. 39-40). He then determined that, although she still could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the regional and national economy, *i. e.*, baker worker, rental clerk, and counter clerk (Tr. 43-44).

## Review

The claimant contends that the ALJ erred by: (i) failing to consider all her mental impairments when assessing her RFC, and (ii) failing to properly analyze the materiality of her substance abuse. The undersigned Magistrate Judge agrees.

The ALJ determined that the claimant had the severe impairments of hepatitis C, left wrist fracture, degenerative changes of the first metacarpal and fifth metatarsal joints, bipolar disorder, major depressive disorder, PTSD, borderline personality disorder, antisocial personality disorder, and polysubstance abuse (Tr. 24). The relevant medical evidence reveals that the claimant fell at work on July 7, 2007, incurring a left shoulder

SLAP tear, rotator cuff tear, and acromioclavicular arthrosis that ultimately required surgery in October 2008 (Tr. 294-295). Four months after surgery she was released to work full time, having reached maximum medical improvement which included improved motion with some discomfort (Tr. 291).

Kathleen Ward, Ph.D. conducted three separate mental status examinations of the claimant. On November 5, 2009, Dr. Ward noted the claimant's reports of self-medicating with drugs and alcohol, that she presented with the odor of alcohol and marked problems with emotional modulation (including sobbing throughout the interview), but giving a fair effort (Tr. 317). The claimant described her mood as sad; was oriented to time, date, and place; and her inability to interpret proverbs placed her in the low intellectual abilities but above 70, compromised by alcohol (Tr. 318). She assessed the claimant with alcohol dependence, amphetamine abuse, and major depressive disorder severe with psychosis, along with Cluster B traits, and opined that the claimant needed inpatient rehab (Tr. 318-319). On November 16, 2011, Dr. Ward noted the claimant presented as intoxicated, and was sad and nervous but candid and not exaggerating her symptoms (Tr. 375-376). Her thought processes were simplistically organized, she described her mood as depressed, she was oriented, her intellectual abilities were reported compromised due to intoxication, and she had deficits in social judgment and problem solving (Tr. 376). Assessing the claimant with polysubstance dependence, severe major depressive disorder, and PTSD, Dr. Ward opined that the claimant was in need of residential detox and rehab, as well as intensive mental health

care (Tr. 376-377). On April 3, 2012, Dr. Ward noted the claimant had recently been hospitalized for psychiatric reasons, and that the claimant was depressed and cooperative (Tr. 500-501). She had no evidence of delusional thought and was oriented, her intellectual abilities were again estimated as low but above 70, and she had noted deficits in social judgment and problem solving (Tr. 501). Dr. Ward's diagnostic impression referred to her two previous examinations, remarking that the claimant had presented "consistently with severe (likely trauma-related) mood issues and severe substance addiction" (Tr. 501-502). Although she did not appear intoxicated at the third assessment, Dr. Ward noted that her severe mood functioning and substance dependency issues remained, along with low intellectual functioning (Tr. 502).

On November 26, 2009, the claimant was admitted to the McAlester ER with complaints of having a nervous breakdown and threatening to kill herself (Tr. 337). She was transferred to Carl Albert Mental Health Center (CAMHC) for inpatient treatment (Tr. 338). At CAMHC she was assessed with bipolar disorder, alcohol dependence, cocaine dependence, and probable antisocial personality disorder (Tr. 367). Her inpatient assessment noted that she was chronically ill – both mentally and physically (Tr. 362-363). Notes from CAMHC reflect that the claimant had a much improved mood by December 1, 2009, but that she easily angered and was eager to leave treatment (staff suspected she wanted to return to drug use); the staff reported her behavior as "intrusive" (Tr. 369). The following day she was discharged to live with her mom, with diagnoses of bipolar disorder, polysubstance dependence, cocaine dependence, borderline personality

disorder, and antisocial personality disorder, and had a guardedly optimistic prognosis depending on follow-up care (Tr. 360). She then began outpatient treatment that same month, but was discharged by May 1, 2010 for failing to participate in treatment for over 90 days. The discharge sheet indicates that the claimant had 12 total previous inpatient admissions for treatment (Tr. 350).

On December 12, 2011, state reviewing physician Cynthia Kampschaefer, Psy.D., found the claimant had mild restriction of activities of daily living, and moderate difficulties in maintaining social functioning and maintaining concentration, persistence, and pace, with no episodes of decompensation (Tr. 400). It was her conclusion that the claimant's substance abuse led to moderate deficits in social interaction and mild deficits in activities of daily living, but that she could perform simple work (Tr. 402). Dr. Kampschaefer then completed a Mental RFC assessment, finding that the claimant had marked limitations in: the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact with the general public (Tr. 404-405). She opined that the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but she could not relate to the general public (Tr. 406).

On February 12, 2012, the claimant was admitted to Griffin Memorial Hospital, and not discharged until March 1, 2012, due to suicidal thoughts and being a danger to herself (Tr. 414). On admission, she was awake and alert but not oriented, she had poor concentration and below average cognition and intellect, and she was a poor historian

with poor insight and judgment (Tr. 414). Her memory came back slowly from February 16 through February 20 and she continued to cognitively clear during her whole stay, and her mood improved (Tr. 415). During her stay, she had no behavioral issues or aggressive issues and her family reported she was more functional than she had been in a long time (Tr. 415). At her first follow-up, she was noted to be depressed, anxious, and labile, but absent of hallucinations, delusions, or suicidal/homicidal ideation. She *was* noted to have evidence of hopelessness, helplessness, and low self-esteem, as well as poor insight, impulse control, and judgment (Tr. 540-541). Her response to medication was noted to be "partially effective" (Tr. 541).

On July 19, 2012, she was taken to CAMHC after being picked up intoxicated and threatening suicide (Tr. 530). She was assessed with major depression recurrent severe with psychosis, alcohol dependence, polysubstance dependence in remission, and borderline personality disorder (Tr. 532). She was once again discharged from treatment at CAMHC on October 15, 2012, for noncompliance over 90 days (Tr. 550). The discharge notes indicate that she was not compliant with nursing services and individual rehab, and only saw the psychiatrist twice before becoming non-compliant (Tr. 550).

"An individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J). When drug abuse is present, the ALJ's task is to determine first whether the claimant is disabled. If the ALJ finds that the claimant is disabled, then the ALJ determines whether the

claimant's "drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 416.935(a). The issue to be resolved is whether the claimant would still be found disabled if the claimant stopped using drugs. 20 C.F.R. §§ 404.1535(b), 416.935(b). To resolve this issue, the ALJ evaluates which of the claimant's limitations "would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. § 416.935(b)(2). If the remaining limitations are deemed not disabling, then the claimant's drug addiction or alcoholism is considered a contributing factor material to the determination of disability. 20 C.F.R. § 416.935(b)(2)(i). Conversely, if the remaining limitations are deemed disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to the determination of disability. 20 C.F.R. § 416.935(b)(2)(ii).

Soc. Sec. Rul. 13-02p sets out further guidance regarding the process for determining whether drug and alcohol abuse (DAA) is a material contributing factor. Soc. Sec. Rul. 13-02p, 2013 WL 621536 (Feb. 20, 2013). "[W]e must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA. . . . We will find that DAA is not material to the determination of disability and allow the claim if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA." *Id.*, 2013 WL 621536, at *9.

In this case, the ALJ relied heavily on notes reflecting the claimant's improvement upon release from CAMHC and Griffin in finding that the claimant's drug use was material to the severity of her impairments. Reliance on improvement while in the highly structured environment of a hospitalized stay, however, is improper. Where "[i]mprovement in a co-occurring mental disorder in a highly structured treatment setting, such as a hospital or substance abuse rehabilitation center, may be due at least in part to treatment for the co-occurring mental disorder, not (or not entirely) the cessation of substance use. . . . In addition, a record of multiple hospitalizations, emergency department visits, or other treatment for the co-occurring mental disorder – with or without treatment for DAA – is an indication that DAA may not be material even if the claimant is discharged in improved condition after each intervention." Soc. Sec. Rul. 13-2p, 2013 WL 621536, at *12-13. The ALJ also failed to note that the claimant's use of alcohol was noted in the record to be a form of self-medication when her prescriptions would run out, which constitutes improper picking and choosing among the medical evidence. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]. *See also* Soc. Sec. Rul. 13-02p, 2013 WL 621536, at *9 ("[W]e must have evidence in the case record that establishes that a claimant with a co-

occurring mental disorder(s) *would not be disabled* in the absence of DAA.") [emphasis added].

The ALJ also failed to acknowledge Dr. Ward's statements from her third mental status evaluation that the claimant had consistently presented with "severe (likely trauma-related) mood issues and severe substance addictions" (Tr. 502). "When it is not possible to separate the mental restrictions and limitations imposed by [drug and alcohol abuse] and the various other mental disorders shown by the evidence, a finding of 'not material' would be appropriate." *McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002) [internal quotations omitted]. Thus, "the agency directed that if the effects of a claimant's mental illness could not be separated from the effects of substance abuse, the abuse would be found *not* to be a contributing factor material to the disability determination." *Id.* [emphasis in original]. The ALJ should have considered this in light of Dr. Ward's statements regarding the relationship between her substance abuse and multiple remaining mental impairments including PTSD, bipolar disorder, major depressive disorder, borderline personality disorder, and antisocial personality disorder (Tr. 38). *See Bayer v. Astrue*, 2010 WL 1348416, at *7 (D. Colo. Mar. 31, 2010) (stating that "when from the record it is not possible to separate the mental restrictions and limitations imposed by substance abuse and the other mental disorders shown by the record" a finding that substance abuse is not a contributing factor material to the disability determination is required), *citing McGoffin*, 288 F.3d at 1253.

Finally, even if the ALJ's finding of materiality were proper, the ALJ nevertheless erred in his step four assessment of the claimant's RFC when he failed to include any limitations related to her multiple severe mental impairments in the RFC at step four. Nor did he provide any explanation for this apparent inconsistency, *see, e. g., Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work."), opting instead to simply find (without support or explanation) that she would no longer be off task 20% of the time if she stopped the substance abuse.

Because the ALJ failed to properly analyze the materiality of claimant's substance abuse as outlined above, and further failed to explain how the claimant's remaining multiple severe mental impairments became so insignificant as to require no limitations in her RFC at step four, the undersigned Magistrate Judge concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis of the medical evidence of record. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied and the decision of the Commissioner is therefore not supported by substantial evidence, and accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED to the ALJ for further proceedings consistent herewith.

**DATED** this 10th day of September, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**